

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| TRACY LYNNE GIMLEN, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD34281 |
| | ) | |
| RUBEN D. RIVERO, | ) | **Filed: November 29, 2016** |
| | ) | |
| Respondent-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Eric D. Eighmy, Associate Circuit Judge

### **AFFIRMED**

Ruben D. Rivero ("Respondent") appeals from the trial court's grant of a full order of protection against him in favor of Tracy Lynne Gimlen ("Petitioner"). In a single point, Respondent claims that the trial court erred because there was not "substantial evidence" to support a finding that Petitioner was subjectively alarmed by Respondent's conduct or that a reasonable person in the same situation would be alarmed by Respondent's conduct. We disagree and affirm.[1]

### **Standard of Review**

In a court-tried case, we will affirm:

---

[1] Petitioner did not file a brief. As a result, we do not have the benefit of Petitioner's analysis and argument.

the trial court's judgment as long as it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. [*Schwalm v. Schwalm*, 217 S.W.3d 335, 336 (Mo.App. E.D. 2007)]. "Substantial evidence has been defined as competent evidence from which the trier of fact could reasonably decide the case." *Towell v. Steger*, 154 S.W.3d 471, 474 (Mo.App. S.D. 2005). In reviewing the trial court's judgment, we view all facts and inferences in a light most favorable to the judgment and defer to the trial court's determination of credibility. *Id*.; *Binggeli v. Hammond*, 300 S.W.3d 621, 623 (Mo.App.W.D.2010).

*Fowler v. Minehart*, 412 S.W.3d 917, 920 (Mo.App. S.D. 2013). "[W]e presume the trial court's judgment is correct, and [the appellant] bears the burden of proving it erroneous." *Skovira v. Talley*, 369 S.W.3d 780, 781 (Mo.App. S.D. 2012). Further, the Adult Abuse Act "is not, nor was it intended to be, 'a solution for minor arguments between adults,'" and, "'[b]ecause there is real harm that can result in abusing the . . . Act and its provisions, including the stigma that may attach to a respondent who is ultimately labeled a 'stalker,' trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection.'" *Id.* (citations omitted); *see also* *Fowler*, 412 S.W.3d at 920 & n.5 (same with an expanded explanation of the potential harms).

**Facts and Procedural Background**

On September 21, 2015, Petitioner filed a verified petition in which she appears to have sought an *ex parte* order of protection and a full order of protection from Respondent.[2] In the petition, it appears Petitioner's request for the orders is based on her allegation that Respondent was stalking her – i.e., Petitioner marked the relationship box labeled "Stalking," and marked boxes that stated "Respondent has knowingly and intentionally"

---

[2] Petitioner proceeded *pro se* in the trial court.

2

"coerced me," "stalked me," "harassed me," and "followed me from place to place."[3] Petitioner also alleged Respondent "started back to work today in my office." Petitioner did *not* mark available boxes to allege that Respondent "caused or attempted to cause me physical harm," or "placed or attempted to place me in apprehension of immediate physical harm," or "sexually assaulted me," or "threatened to do any of the above." In support of her request for an *ex parte* order, Petitioner alleged that "I am afraid of Respondent," and also that Respondent "has continuously harassed me for 2 yr at my work," and "I'm in fear for my safety, my life." The trial court denied the requested *ex parte* order of protection on September 22, 2015, and scheduled a hearing on the request for a full order of protection on December 16, 2015.

Although counsel for Respondent indicated at the outset of the hearing that Respondent would testify, Petitioner was the only witness at the hearing. Petitioner testified that Respondent was "married," and that Petitioner and Respondent "work together in the post office," but "don't have any [other] kind of relationship." Respondent also was Petitioner's "union steward." Beginning in February 2012 and continuing into January 2013 and then again on January 11, 2014, Respondent made unwanted contact with Petitioner when she was out on her mail route on "eight to ten" occasions. On the first occasion, Respondent told Petitioner that flowers she had received were "from him." On subsequent occasions, Respondent told Petitioner "how good [she] looked when [she] was wet" from the rain. On other occasions, including on January 11, 2014, Respondent would find and follow Petitioner for a short time on her mail route. Respondent's conduct "was reviewed

---

[3] As explained in the analysis portion of this opinion, coercion and harassment are not relevant in the circumstances of this case except to the extent the evidence showing coercion and harassment supports a finding of stalking. *See also* **Fowler**, 412 S.W.3d at 921 & nn.8 and 9 (abuse and harassment are not the same as stalking).

3

administratively by the post office." In January 2013, the "postal service" prohibited Respondent from talking to Petitioner. And, "for a time," Respondent "was not allowed to work in the same building" as Petitioner. At the time of the hearing, Petitioner and Respondent again were working in the "same building." Petitioner filed a report with the police after Respondent followed her on January 11, 2014. In July 2014, unsolicited "magazine subscriptions" and bills for those subscriptions began showing up at Petitioner's home. The unsolicited subscriptions and bills continued until Respondent was arrested in December 2014 and charged with "six felony charges for forgery."

Petitioner testified that:

I've tried and tried to protect myself through the postal service. Now, he's harassed me at home by sending this stuff and the bills. I want to know -- make sure that I am protected because we do not have a court date till May 2nd, and I have to work in the same building with him still.
I need -- I need to be protected someway.

On cross examination, Petitioner acknowledged that conditions of Respondent's bond in his criminal case prohibited Respondent from contacting Petitioner at the time of the hearing. Petitioner also stated Respondent never made "any threats to [her]." On redirect, Petitioner told the court:

For several years, I have dealt with [Respondent] and complained about him, and the hostility that he's saying is -- that he's trying to displace is that I have gone to the police. I've gone to the supervisors. They've put all these things in action, but yet he – [Respondent] still finds a way to get at me by sending things to my home with the bill.
I've spent a lot of time and effort having to call everything back and receive this stuff, cancel all this stuff, get these bills taken out of my name, and him showing that I'm a little aggravated at times is because I get very frustrated because nothing has been done on this man and now he's finally

4

facing felony charges which I'm thrilled that he will finally, hopefully get his repercussion for everything he's done for me over the last three years.[4]

Shortly after the hearing was completed, the trial court entered a judgment granting Petitioner a full order of protection from Respondent. In the judgment, the trial court found that Petitioner and Respondent had no relevant relationship.

## Analysis

In his sole point on appeal, Respondent asserts that "the trial court erred in granting a full order of protection" because there was not "substantial evidence" to support a finding that Petitioner was subjectively alarmed by Respondent's conduct or that a reasonable person in the same situation would be alarmed by Respondent's conduct. We disagree.

Where a "respondent" is not a "family or household member" under section 455.010(7) and the petitioner is an adult victim as in this case, the petitioner may obtain a full order of protection from the respondent only if the petitioner proves that respondent stalked or sexually assaulted the petitioner.[5] Sections 455.010(11) and (12), 455.020.1 and 455.040.1; *Skovira*, 369 S.W.3d at 784. Petitioner does not claim that Respondent sexually assaulted her. As a result, to be entitled to a full order of protection from Respondent, Petitioner had to prove Respondent stalked her.

Under section 455.010(14), stalking "is when any person purposely engages in an unwanted course of conduct that causes alarm to another person . . . when it is reasonable in

---

[4] Petitioner's verified petition was not offered or admitted into evidence at the hearing, and the record provided us does not show any reference to the verified petition during the hearing that would support a constructive admission of the verified petition into evidence. *See Skovira*, 369 S.W.3d at 782 & n.3, 785-86 & n.6 (indicating that actual or constructive admission of a verified petition is necessary for the trial court to consider petitioner's statements in the verified petition); *N.L.P. v. C.G.W.*, 415 S.W.3d 800, 804, 803-04 (Mo.App. E.D. 2013) (allegations in petition not considered in determining whether the respondent's conduct caused the petitioner to subjectively fear danger of physical harm because not included in the petitioner's testimony at the hearing); *E.A.B. v. C.G.W.*, 415 S.W.3d 795, 799-800 (Mo.App. E.D. 2013) (same as *N.L.P. v. C.G.W.*).

[5] All section references are to RSMo, Cum.Supp. 2015.

5

that person's situation to have been alarmed by the conduct," and alarm "means to cause fear of danger of physical harm." By the terms of the statute, to prove Respondent stalked her, Petitioner was required to prove that Respondent's unwanted course of conduct caused her subjectively to fear danger of physical harm and also was adequate to cause a reasonable person in the same situation to fear danger of physical harm. *See also* **Skovira**, 369 S.W.3d at 785, 784-85, 786 (same). In this case, we must defer to the trial court's assessment of credibility to support a finding that Respondent's unwanted course of conduct caused Petitioner to fear danger of physical harm, and the evidence of Respondent's unwanted acts of contacting her on her mail route in the period of February 2012 through January 2013, and on one occasion in January 2014, and sending unpaid, magazine subscriptions to her home in the last half of 2014, were adequate to support a finding that that conduct would cause a reasonable person in the same situation to fear danger of physical harm.[6]

We affirm the judgment.


Nancy Steffen Rahmeyer, J. - Opinion Author

Daniel E. Scott, J. - Concurs

William W. Francis, Jr., J. - Concurs

---

[6] It is troubling Petitioner waited over eight months after receipt of the last magazine subscription, and over nineteen months after the last unwanted personal contact by Respondent, to file her petition; however, the trial court had Petitioner in court and made a finding of stalking by these actions.

6